# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

George Harms Construction Co., Inc., *et al.*,

Plaintiffs-Appellants,

v.

Gateway Development Commission, *et al.*,

Defendants-Appellees.

Appeal from the United States District Court
for the District of New Jersey
Case No. 2:25-cv-17679

# BRIEF OF AMICI CURIAE NORTH AMERICA'S BUILDING TRADES UNIONS AND THE HUDSON COUNTY BUILDING AND CONSTRUCTION TRADES COUNCIL IN SUPPORT OF DEFENDANTS-APPELLEES

Raymond G. Heineman
KROLL HEINEMAN PTASIEWICZ
PARSONS & JAMESON
91 Fieldcrest Ave.
Suite 35
Edison, N.J.
(732) 491-2100

Jonathan D. Newman
Jacob J. Demree
Shiva M. Sethi
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300

*Counsel for Amici Building Trades Unions*

April 6, 2026

# DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Amici North America's Building Trades Unions and the Hudson County Building and Construction Trades Council provide the following disclosure statement:

North America's Building Trades Unions and the Hudson County Building and Construction Trades Council are unincorporated labor associations. They have no parent companies, and no publicly held company holds ten percent or more of their stock. Amici are not aware of any nonparty, publicly held corporations with financial interests in the outcome of this proceeding.

# TABLE OF CONTENTS

Disclosure Statement ......................................................................i

Table of Authorities.....................................................................iv

Statement of Interest .................................................................1

Introduction.................................................................................2

Statement of the Case .................................................................4

    I.      The Surface Alignment Project PLA Accommodates the Unique Needs of a Complex Construction Project. ...............4

    II.    Harms Doesn't Want to Agree to the PLA. ..........................10

Argument.......................................................................................12

    I.      Appellants Are Not at Risk of Suffering Irreparable Harm.................................................................................12

        A.    The PLA Does Not Run Afoul of the Supreme Court's Holding in Janus. ..........................................12

            1.    The PLA Does Not Require Employees to Subsidize Any Union...........................................12

            2.    The PLA's Requirement that Contractors Contribute to "Established Employee Benefit Funds" Does Not Violate Janus. ............14

            3.    Janus Does Not Apply to Private-Sector PLAs. ..................................................................18

            4.    Janus Did Not Overturn Binding Law Governing Exclusive Representation. ................20

            5.    Road-Con Has Nothing to Do with This Case. .................................................................21

B. The District Court Was Right to Reject Appellants' Irreparable Harm Arguments. .................. 23

    1. The PLA Requirement Does Not Suppress Appellants' Speech. ............................................. 23

    2. Appellants' Remaining Harms Are Self-Inflicted. ........................................................... 25

II. The PLA Does Not Compel Expressive Association. ............. 26

Conclusion ....................................................................................... 35

Certificate of Compliance ..........................................................................

Certificate of Service ..................................................................................

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Abood v. Detroit Bd. of Educ.*,
    431 U.S. 209 (1977) .................................................................. 18

*Associated Builders & Contractors W. Pa. v. Cmty. Coll. of
    Allegheny Cnty.*, 81 F.4th 279 (3d Cir. 2023)....................... 6, 22, 27

*Associated Builders & Contractors, Inc. v. San Francisco Airports
    Comm'n*, 981 P.2d 499 (Cal. 1999).............................................32-33

*Baisley v. Int'l Ass'n of Machinists*,
    983 F.3d 809 (5th Cir. 2020) ................................................... 19

*Boy Scouts of Am. v. Dale*,
    530 U.S. 640 (2000) ................................................................28

*Caplan v. Fellheimer Eichen Braverman & Kaskey*,
    68 F.3d 828 (3d Cir. 1995).....................................................25

*Christian Lab. Ass'n v. City of Duluth*,
    142 F.4th 1107 (8th Cir. 2025).............................................. 13

*Christian Lab. Ass'n v. City of Duluth*,
    No. 21-cv-227, 2023 U.S. Dist. LEXIS 103016 (D. Minn. June
    14, 2023), *vacated*, 142 F.4th 1107 (8th Cir. 2025) ............ 19, 31-32

*D'Agostino v. Baker*,
    812 F.3d 240 (1st Cir. 2016)................................................. 28, 33

*Deering v. IBEW Loc. 18*,
    No. 21-cv-7447, 2022 U.S. Dist. LEXIS 100847 (C.D. Cal.
    Apr. 7, 2022), *aff'd mem.*, No. 22-55458, 2023 U.S. App.
    LEXIS 28051 (9th Cir. Oct. 23, 2023) ..........................................17

*Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co.*,
    318 A.3d 643 (N.J. 2024) .......................................................2

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024)................................23-25

*George Harms Constr. Co. v. N.J. Turnpike Auth.*, 644 A.2d 76 (N.J. 1994) ........................................................2

*Goldstein v. Pro. Staff Cong.*, 643 F. Supp. 3d 431 (S.D.N.Y. 2022) ................................33

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18 (2d Cir. 2002)........................................15

*Harris v. Quinn*, 573 U.S. 616 (2014) ........................................................20

*Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989)................................24-25

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995) ................................................28

*Idaho Bldg. & Constr. Trades Council v. Inland Pac. Chapter of Associated Builders & Contractors, Inc.*, 801 F.3d 950 (9th Cir. 2015) ............................................................16

*Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018) ..............................................*passim*

*LaSpina v. SEIU Pa. State Council*, 985 F.3d 278 (3d Cir. 2021)........................................13

*Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736 (3d Cir. 2013) ................14

*Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33 (1998) ..........................................................8

*Master Builders of Iowa, Inc. v. Polk County*, 653 N.W.2d 382 (Iowa 2002) ....................................33

*Minn. State Bd. for Cmty. Colls. v. Knight,*
465 U.S. 271 (1984) ........................................................ 21, 27

*N.J. Elec. Life Safety Sec. Ass'n v. N.J. Dep't of Lab. & Workforce Dev.*, No. 21-cv-622, 2021 U.S. Dist. LEXIS 209609 (D.N.J. Oct. 29, 2021) .................................................................. 17

*Nasir v. Morgan,*
350 F.3d 366 (3d Cir. 2003) ............................................... 14

*NLRB v. Amax Coal Co.,*
453 U.S. 322 (1981) ........................................................... 15

*Oliver v. SEIU Loc. 668,*
830 F. App'x 76 (3d Cir. 2020) ............................... 20-22, 27

*Pruneyard Shopping Ctr. v. Robins,*
447 U.S. 74 (1980) ............................................................ 31

*Rizzo-Rupon v. Int'l Ass'n of Machinists Dist. 141,*
822 F. App'x 49 (3d Cir. 2020) ......................................... 19

*Road-Con, Inc. v. City of Philadelphia,*
120 F.4th 346 (3d Cir. 2024) ..................................... 21-22, 27

*Roberts v. U.S. Jaycees,*
468 U.S. 609 (1984) ........................................................... 27

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc. (FAIR),*
547 U.S. 47 (2006) ..................................................... 28-31, 33

*W. Va. State Bd. of Educ. v. Barnette,*
319 U.S. 624 (1943) ...................................................... 28-29

*Warth v. Seldin,*
422 U.S. 490 (1975) ........................................................... 14

*Wash. State Grange v. Wash. State Republican Party,*
552 U.S. 442 (2008) ........................................................... 31

*Wooley v. Maynard,*
    430 U.S. 705 (1977) ...................................................................28-29

**Statutes**

29 U.S.C. § 152(2) ..................................................................... 18

29 U.S.C. § 158(e) .....................................................................5-6

29 U.S.C. § 158(f) ......................................................................5-6

29 U.S.C. § 175a ......................................................................... 16

29 U.S.C. § 1002(3) ................................................................... 16

I.R.C. § 527 ................................................................................. 16

N.J. Stat. Ann. § 32:36-2 ............................................................. 4

N.J. Stat. Ann. § 52:38-3 ............................................................. 7

N.Y. Lab. Law § 222 ................................................................... 7

**Other Authorities**

29 C.F.R. § 2510.3-1(a)(3)......................................................... 16

Emp. Benefits Sec. Admin., Advisory Op. 2008-05A (June 27,
    2008), https://www.dol.gov/sites/dolgov/files/EBSA/about-
    ebsa/our-activities/resource-center/advisory-opinions/2008-
    05a.pdf ............................................................................... 15

Executive Order 14063, 87 Fed. Reg. 7,363 (Feb. 9, 2022)...................... 7

Fed. R. App. P. 29(a)(2) .............................................................. 2

Fed. R. App. P. 29(a)(4)(E) ......................................................... 2

Off. of Mgmt. & Budget, M-25-29, *Use of Project Labor Agreements on Federal Construction Projects — Amendments to OMB Memorandum M-24-06* (June 12, 2025), https://www.white house.gov/wp-content/uploads/2025/02/M-25-29-Use-of-Project-Labor-Agreements-on-Federal-Construction-Projects-Amendments-to-OMB-Memorandum-M-24-06.pdf ......................... 7

U.S. Const. amend. I .................................................................. *passim*

U.S. Gen. Acct. Off., GAO/GGD-98-82, *Project Labor Agreements: The Extent of Their Use and Related Information* (1998), https://www.gao.gov/assets/ggd-98-82.pdf ................................... 6-7

## STATEMENT OF INTEREST

North America's Building Trades Unions ("NABTU") is a labor organization composed of fourteen national and international unions and over 300 provincial, state, and local building and construction trades councils, which together represent more than three million workers. The Hudson County Building and Construction Trades Council ("Hudson County Building Trades") is one of NABTU's local councils. The Hudson County Building Trades is composed of twenty-one affiliated local unions and represents approximately 3,000 workers in Hudson County.

NABTU and its local councils negotiate project labor agreements ("PLAs") across the country. Public entities like the Gateway Development Commission often use PLAs to avoid delay, increase cost savings, and promote labor harmony. NABTU and the Hudson County Building Trades (together, "Building Trades Unions") have a strong interest in this case, which challenges the "Project Labor Agreement Covering the New Jersey Surface Alignment (Package 3) Project in Hudson County, New Jersey." A583 (hereinafter "the PLA").

The Hudson County Building Trades is a party to the PLA, which governs labor terms for work that is part of the multibillion-dollar,

nationally-significant Hudson Tunnel Project.  The outcome of this case could threaten the Building Trades Unions' ability to bargain for family-sustaining wages and benefits and safe working conditions for employees on the Hudson Tunnel Project.

The Building Trades Unions file this brief with leave of the Court under Federal Rule of Appellate Procedure 29(a)(2).  Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), the Building Trades Unions and their counsel declare that: (1) no party's counsel authored this brief in whole or in part; (2) no party or party's counsel contributed money to fund the preparation or submission of this brief; and (3) no person other than the Building Trades Unions, their members, and their counsel has contributed money to fund the preparation or submission of this brief.

## INTRODUCTION

The George Harms Construction Co. ("Harms") doesn't like PLAs. Harms has litigated against PLA requirements on public projects for over thirty years.  *See George Harms Constr. Co. v. N.J. Turnpike Auth.*, 644 A.2d 76 (N.J. 1994); *Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co.*, 318 A.3d 643 (N.J. 2024).  This time, Harms and one of its employees, Brian Burns — a member of the United Steelworkers of

2

America ("USW") — claim that PLA requirements on the multibillion-dollar Hudson Tunnel Project violate the First Amendment.

Appellants' First Amendment claim is constructed on two faulty premises. First, they assert that the PLA requires Appellants to subsidize the Hudson County Building Trades and its affiliates. Second, they contend that the PLA requires Burns to "disavow" his USW affiliation. Both premises are incorrect.

The PLA does not require either Harms or Burns to pay anything whatsoever to the Hudson County Building Trades and/or its affiliates. The PLA also does not require that Burns become a union member of the Hudson County Building Trades or any of its affiliates.

Because the PLA does not require either Harms or Burns to subsidize any union, the court below was right to deny the requested preliminary injunctive relief. The court was also correct to hold that the PLA does not violate the Appellants' right of association. If Harms signed the PLA, neither it nor Burns would be forced to become members of, or advocate for, the unions signatory to the PLA. Accordingly, this Court should affirm the district court's decision.

## STATEMENT OF THE CASE

**I.    The Surface Alignment Project PLA Accommodates the Unique Needs of a Complex Construction Project.**

New York and New Jersey created the Gateway Development Commission in July 2019 to rebuild commuter rail infrastructure between the two states. *See generally* N.J. Stat. Ann. § 32:36-2. The Gateway Development Commission's Hudson Tunnel Project is "the most urgent public transportation project" in the country and involves the construction of nine miles of passenger rail track. A671 ¶ 2 (Rinaldi Decl.). Construction is needed to "improve resiliency, reliability, and redundancy for the busiest section of the Northeast Corridor ('NEC') — the busiest passenger rail line in the United States." A524 (Resolution #0725-04). The Gateway Development Commission has secured over $14 billion in federal funding for the Hudson Tunnel Project. A678 ¶ 6 (Rinaldi Decl.).

The Hudson Tunnel Project is composed of ten interdependent construction projects, including the P3 New Jersey Surface Alignment Project — the subject of this case. A671-72 ¶ 2 (Rinaldi Decl.). The Surface Alignment Project includes construction of about 7,450 miles of new track in Secaucus and North Bergen, New Jersey. A677 ¶ 5(a)

4

(Rinaldi Decl.). Workers will build a retaining wall, bridges over a road and other railroads, a viaduct over wetlands, and access roads, among other things. *Id.*; A524 (Resolution #0725-04). Much of the construction will occur next to, upon, or above live railroad tracks. A524 (Resolution #0725-04).

To avoid delay, increase cost savings, and promote labor harmony, the Gateway Development Commission adopted the PLA. A524-25 (Resolution #0725-04). PLAs are comprehensive collective bargaining agreements negotiated between unions, like the Hudson County Building Trades, and owners, contractors, or construction managers. Congress authorized the use of PLAs under Sections 8(e) and (f) of the National Labor Relations Act, 29 U.S.C. § 158(e), (f). Section 8(f) allows employers in the construction industry to sign *prehire* agreements with building and construction trades unions. Therefore, prior to beginning a construction project, a contractor can sign a collective bargaining agreement with building and construction trades unions to guarantee a reliable source of qualified employees, even though employees have not yet been hired.

Section 8(e)'s construction-industry proviso allows contractors to enter into agreements with labor organizations that limit work on a

construction project to those contractors that agree to be bound by the collective bargaining agreement covering the project.  That proviso is an exception to the general rule that an employer and a union may not enter into "hot cargo" agreements, in which the employer agrees not to do business with another company.

Together, Sections 8(e) and (f) allow for prehire collective bargaining agreements covering all work on a construction project irrespective of whether the work is subcontracted.  That is precisely what a PLA is, as this Court has previously recognized. *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 283 (3d Cir. 2023) ("A project labor agreement is a collective-bargaining agreement between a project owner, contractors, and unions that sets the terms and conditions of employment for a particular construction project.").

The federal government has used PLAs to systematize labor relations on large and complex construction projects since at least 1938. *See, e.g.*, U.S. Gen. Acct. Off., GAO/GGD-98-82, *Project Labor*

*Agreements: The Extent of Their Use and Related Information* 4 (1998).[1]

At the federal level, PLAs have enjoyed bipartisan support in recent years for use on federal projects. President Biden issued an Executive Order requiring PLAs on large-scale projects built for the federal government, and President Trump has kept that Executive Order in place.[2] At the state level, both New York State and New Jersey authorize their public entities to require PLAs on public work projects. N.Y. Lab. Law § 222; N.J. Stat. Ann. § 52:38-3.

The PLA here, to which the Hudson County Building Trades is a party, binds all signatory unions and contractors performing work on the Surface Alignment Project. A585.[3] Importantly, the PLA fully applies

---

[1]     https://www.gao.gov/assets/ggd-98-82.pdf

[2]     *See* Executive Order 14063, 87 Fed. Reg. 7,363 (Feb. 9, 2022) (issued by President Biden); Off. of Mgmt. & Budget, M-25-29, *Use of Project Labor Agreements on Federal Construction Projects — Amendments to OMB Memorandum M-24-06* (June 12, 2025) (explaining both that "the Trump Administration supports the use of PLAs" and that "Executive Order (E.O.)14063 remains in effect"), https://www.whitehouse.gov/wp-content/uploads/2025/02/M-25-29-Use-of-Project-Labor-Agreements-on-Federal-Construction-Projects-Amendments-to-OMB-Memorandum-M-24-06.pdf.

[3]     Unless otherwise indicated parenthetically or by context, appendix citations are to the PLA.

"to any successful bidder for Project work . . . without regard to whether that successful bidder performs work at other sites on either a union or non-union basis and without regard to whether employees of such successful bidder are, or are not, members of any unions." A587. The PLA supersedes any conflicting provisions in local collective bargaining agreements with respect to the Project. A585.

The PLA does not require any employee performing covered work to pay any dues, fees, or anything of value to any union as a condition of employment. Here, the PLA affirmatively states that, "[t]he union security provisions contained in the applicable [local labor agreements] shall not apply to the employees covered by this Agreement," and "[n]o employees shall be discriminated against at the Project site because of the employee's union membership or lack thereof." A591.[4]

Under Article 4 of the PLA, contractors agree to recognize the signatory unions as the exclusive bargaining representatives of craft

---

[4] A union security clause is a provision in a collective bargaining agreement that requires employees performing work covered by the agreement to pay dues or fees to a labor union as a condition of employment. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 36 (1998).

employees performing onsite work on the Surface Alignment Project. A589. The contractors further agree to hire employees through those signatory unions' job referral systems. *Id.* But, the contractors may request by name up to 12% of their workforce covered by the PLA notwithstanding the unions' job referral systems. A590. The unions, in turn, promise that "[n]o employment applicant shall be discriminated against by any referral system or hiring hall because of the applicant's union membership, or lack thereof." A591.

With respect to wages and required contributions to benefit funds, the PLA states that all employees shall be paid the applicable base hourly wage set forth in the local labor agreements of the signatory unions, and that, "[t]he Contractors agree to pay contributions on behalf of all employees covered by this Agreement to the established employee benefit funds," pursuant to those "legally established Trust Agreements specifying the detailed basis on which contributions are to be paid into, and benefits paid out of, such Trust Funds." A606.

The PLA also includes no-strike, no-lockout obligations binding on both labor and management, A593-94; establishes a three-step grievance procedure, A597-600; and provides for efficient resolution of craft

jurisdictional disputes, A602-04.  In addition, the PLA includes apprentice utilization, safety, and nondiscrimination requirements. A611-13.

## II.    Harms Doesn't Want to Agree to the PLA.

Harms is one of four contractor teams that was prequalified to bid on the Surface Alignment Project.  A468 (prequalification notice).  But Harms does not want to agree to the Surface Alignment Project PLA because it believes that doing so would force it to breach its collective bargaining agreement with the USW.  A80 ¶ 17 (Harms Cert.).

Harms has collective bargaining agreements with Heavy and General Laborers Local 472 and USW Local 318 that cover its over 200 employees, including Burns.  A77 ¶¶ 4-5 (Harms Cert.); A88 ¶¶ 2-3 (Burns Cert.).  Laborers Local 472 is a member of the Hudson County Building Trades.  A693 ¶ 15 (Kelleher Decl.).  USW is not, but "there is absolutely no reason why the [Hudson County Building Trades] would not discuss with [USW] its participation in the surface alignment project if [USW] notified the [Hudson County Building Trades] that it wanted to do so."  A692 ¶ 12 (Kelleher Decl.).  USW and NABTU's New Jersey affiliate councils have previously agreed to side letters that make it easier

10

for Steelworkers-represented employees to work on PLA-covered projects. A692-93 ¶¶ 13-14 (Kelleher Decl.).

Harms' collective bargaining agreement with the USW does not preclude Harms from signing the PLA. Although it has recognized the USW as the "exclusive collective bargaining representative of all employees in the classifications covered by this Agreement," Harms retains the right to add or subcontract job classifications from the coverage of its Agreement with the USW. A713 (USW Agmt.). For example, although Harms' collective bargaining agreement with the USW includes the classification of Heavy and General Laborer, Harms *also* has a collective bargaining agreement with Laborers Local 472 covering Harms employees classified as Heavy and General Laborers. A727-28 (USW Agmt.). Thus, under Harms' agreement with the USW, it has the management right to enter into a collective bargaining agreement with another labor organization and the discretion to determine whether to employ USW-represented employees on a project.

Nevertheless, Harms refused to bid on the project, even though unsuccessful prequalified bidders that submitted a conforming bid are eligible for a stipend of up to $1.2 million. A486 (RFP). Instead, Harms

11

filed a formal bid protest on October 8, 2025, A58 ¶ 114 (Compl.), and Appellants filed this suit on November 18, 2025, A36 (Compl.). Appellants moved for preliminary injunctive relief, but the district court denied their request, in large part because "[t]he PLA's terms are not exclusionary" and because Appellants failed to show any irreparable harm. A11. Appellants appealed to this Court on December 16, 2025. A1-2.

## ARGUMENT

### I. Appellants Are Not at Risk of Suffering Irreparable Harm.

#### A. *The PLA Does Not Run Afoul of the Supreme Court's Holding in Janus.*

Appellants contend that *Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018) is dispositive and holds that the PLA violates the First Amendment. They are mistaken. *Janus* does not provide any support for their argument. The PLA does not infringe on Appellants' First Amendment rights, and therefore, Appellants could not have suffered any irreparable harm resulting from such an alleged violation.

##### 1. *The PLA Does Not Require Employees to Subsidize Any Union.*

In *Janus*, the Supreme Court held that an Illinois law requiring

employees of the State to pay a fee to the union that represented them, even if they chose not to join that union, compelled those employees to "subsidize private speech on matters of substantial public concern" and, therefore, violated the First Amendment. 585 U.S. at 885-86. This Court has recognized that the "core holding" of *Janus* is that compelling nonmembers of a union to subsidize the union violates those nonmembers' free speech rights. *LaSpina v. SEIU Pa. State Council*, 985 F.3d 278, 286 (3d Cir. 2021).

In a case similar to this one, the Eighth Circuit recognized that a First Amendment claim under *Janus* belongs to employees because "contractors, after all, do not have to join a union, which means they have no First Amendment speech or associational claims of their own." *Christian Lab. Ass'n v. City of Duluth*, 142 F.4th 1107, 1111 (8th Cir. 2025).

Here, the only appellant who could have a *Janus* claim is Burns, and as explained, the PLA could not be any clearer that Burns would not have to pay any fees or dues to perform work subject to the PLA, nor would he be required to become a member of any union or drop his USW membership. Under Article 4, Section 5 of the PLA, unions are prohibited

13

from enforcing union security provisions against employees on the project, and "[n]o employee shall be discriminated against at the Project site because of the employee's union membership or lack thereof." A591. Likewise, under Article 4, Section 3, unions are prohibited from discriminating against nonmembers in referring applicants out to work, meaning *any qualified employee*, whether a dues-paying member or not, can be referred out to work on the project. *Id.* These provisions prevent any compelled subsidization of a union by Burns.[5]

>   2.   *The PLA's Requirement that Contractors Contribute to "Established Employee Benefit Funds" Does Not Violate Janus.*

If Harms signed the PLA, it would be required to contribute to established benefit funds. A606. Putting aside that contractors do not have any rights under *Janus*, payments to benefit funds are not payments to unions' general treasuries. Rather, benefit funds are

---

[5]   Harms cannot raise a *Janus* claim on behalf of its employees because it does not satisfy the requirements for third-party standing. Federal courts prohibit parties from bringing claims on behalf of another, except in rare circumstances. *E.g.*, *Majestic Star Casino, LLC v. Barden Dev., Inc.  (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 748-49 (3d Cir. 2013); *Nasir v. Morgan*, 350 F.3d 366, 376 (3d Cir. 2003). Absent third-party standing, plaintiffs "must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

separate labor-management trust funds — and separate legal entities — governed by trustees and subject to the Employee Retirement Income Security Act ("ERISA").

Trustees of ERISA funds have "an unwavering duty of complete loyalty to the beneficiar[ies] of the trust, to the exclusion of the interests of all other parties." *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981). This duty of loyalty prohibits plan trustees from using plan assets to promote collateral public policy preferences, such as policies to "achieve a particular collective bargaining objective," or to "urge union representation of employees in the collective bargaining process." Emp. Benefits Sec. Admin., Advisory Op. 2008-05A (June 27, 2008);[6] *see also Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 33 (2d Cir. 2002) (finding that an ERISA plan insurer and fiduciary breached its duty of loyalty by using plan assets to lobby Congress to amend ERISA to relieve it of the fiduciary duties that the courts have held ERISA may impose on insurers). Thus, compelled payments to an ERISA benefit fund do not — and legally cannot — subsidize a union.

---

[6] https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/advisory-opinions/2008-05a.pdf

15

Appellants are wrong when they assert that the required fringe benefit contributions include "payments toward political organizations that lobby on behalf of the [Hudson County Building Trades'] interests." Opening Br. 5; *see* A573-76 (Silber Cert.). The PLA limits contributions to "established employee benefit funds," which are "[b]ona fide jointly trusted fringe benefit plans established or negotiated through collective bargaining." A606. The term "employee benefit fund" or "employee benefit plan" has a specialized definition under ERISA and refers only to plans that provide welfare or pension benefits to employees. *See* 29 U.S.C. § 1002(3). Political action funds, labor-management cooperation committees ("LMCCs"), and industry advancement funds (also called market recovery or job targeting funds) don't provide employee benefits, so they are not the "established employee benefit funds" referred to by the PLA.[7]

---

[7] Political action funds make election-related contributions and expenditures. *See* I.R.C. § 527. LMCCs support efforts to improve labor-management relationships and solve problems of mutual concern. 29 U.S.C. § 175a note; *see* 29 C.F.R. § 2510.3-1(a)(3). And industry advancement funds subsidize contractors' payments of wages to make their bids more competitive. *Idaho Bldg. & Constr. Trades Council v. Inland Pac. Chapter of Associated Builders & Contractors, Inc.*, 801 F.3d 950, 955 (9th Cir. 2015).

Unsurprisingly, courts have refused to extend the holding in *Janus* to apolitical contributions to fringe benefit funds. For example, in *Deering v. IBEW Local 18*, No. 21-cv-7447, 2022 U.S. Dist. LEXIS 100847 (C.D. Cal. Apr. 7, 2022), *aff'd mem. on different grounds*, No. 22-55458, 2023 U.S. App. LEXIS 28051 (9th Cir. Oct. 23, 2023), a public employer deducted contributions from employees' wages for a joint labor-management training program. The plaintiff employee claimed that the training program deductions violated the First Amendment under *Janus*. But the court explained that "[t]he Supreme Court's holding in *Janus* is limited to agency fees." *Id.* at *15. The court refused to extend *Janus* to the context of contributions to employee benefit funds like the training program. *Id.*

Similarly, in *New Jersey Electronic Life Safety Security Ass'n v. New Jersey Department of Labor & Workforce Development*, the court rejected a *Janus* challenge to a requirement that employers support apprenticeship programs, since employers were not being compelled to support unions. No. 21-cv-622, 2021 U.S. Dist. LEXIS 209609, at *50-51 (D.N.J. Oct. 29, 2021). Here, though Harms or Burns might prefer to fund or receive benefits through a different source, contributions to the

separate ERISA benefit funds do not subsidize union speech or any other ideas with which Appellants might disagree.

### 3. *Janus Does Not Apply to Private-Sector PLAs.*

The decision in *Janus* does not even apply here because the PLA only covers employees of private sector contractors. The issue in *Janus* was whether the Supreme Court correctly held in *Abood v. Detroit Board of Education* that a union security clause did not violate "the constitutional rights of government employees." *Abood*, 431 U.S. 209, 211 (1977); *see Janus*, 585 U.S. at 886. The Court overruled *Abood*, holding that "States and public-sector unions may no longer extract agency fees from nonconsenting employees." *Janus*, 585 U.S. at 929-30; *see also id.* at 928 n.27. In so holding, the Court explained that *Abood* "did not sufficiently take into account the difference between the effects of agency fees in public- and private-sector collective bargaining." *Id.* at 920.

The PLA applies to employees of *private-sector contractors*, whose employment is governed by the National Labor Relations Act. *See* 29 U.S.C. § 152(2) (defining "employer" to exclude public-sector employers). Importantly, unlike the public employer in *Janus*, the Gateway

Development Commission is not party to the challenged contract. This Court has already stressed that "*Janus* took pains to distinguish" cases involving employees of private sector employers, which present a "'very different First Amendment question' than the public-sector unions at issue in *Janus*." *Rizzo-Rupon v. Int'l Ass'n of Machinists Dist. 141*, 822 F. App'x 49, 50 (3d Cir. 2020) (quoting *Janus*, 585 U.S. at 918); *see also Baisley v. Int'l Ass'n of Machinists*, 983 F.3d 809, 810 (5th Cir. 2020) (similar).

The district court in *Christian Labor Ass'n* stated that *Janus* does not apply to PLAs that cover only private sector workers. No. 21-cv-227, 2023 U.S. Dist. LEXIS 103016, at *35 (D. Minn. June 14, 2023), *vacated on other grounds*, 142 F.4th 1107 (8th Cir. 2025). In that case, PLAs required by several public entities were challenged on First Amendment grounds. The court explained that *Janus* did not apply, because "the PLAs d[id] not govern public-sector employees." *Id.* Instead, the PLAs applied "only to private employees and private-sector collective bargaining." *Id.*

The PLA here, as in *Christian Labor Ass'n*, is a private agreement that will not "have a serious impact on the budget of the government unit

19

in question." *Janus*, 585 U.S. at 907. Negotiating positions on "core issues such as wages, pensions, and benefits" have no connection to "important political issues" and are not inherently political speech. *Id.* at 920 (quoting *Harris v. Quinn*, 573 U.S. 616, 636 (2014)). Therefore, *Janus* does not even apply to the PLA.

### 4. *Janus Did Not Overturn Binding Law Governing Exclusive Representation.*

Appellants contend that the PLA compels them to associate with the Hudson County Building Trades rather than the USW in violation of their First Amendment rights. Opening Br. 17. In that respect, the Appellants are challenging the district court's holding that the PLA's recognition of the Hudson County Building Trades as the exclusive representative of employees performing PLA-covered work did not violate the First Amendment.

The district court recognized properly that *Janus* did not find the fact that the union in that case was the exclusive representative "to be constitutionally infirm." A12. Indeed, this Court has rejected challenges to exclusive representation post-*Janus*. *See Oliver v. SEIU Loc. 668*, 830 F. App'x 76, 80 (3d Cir. 2020). The constitutionality of the PLA's recognition of the Hudson County Building Trades as the exclusive

20

representative is governed not only by *Oliver*, but also by the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271, 288 (1984).

In that case, the Supreme Court held that exclusive representation schemes do not violate the First Amendment. 465 U.S. at 288. Because "*Janus* acknowledged the state practice of choosing an exclusive bargaining representative, yet concluded that 'states can keep their labor-relations systems exactly as they are,'" *Knight* remains binding precedent. *Oliver*, 830 F. App'x at 80 (quoting *Janus*, 585 U.S. at 928 n.27).

### 5. *Road-Con Has Nothing to Do with This Case.*

Appellants cite to the Court's decision in *Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346 (3d Cir. 2024) to support their argument that "the Project PLA violates Appellants' Free Speech First Amendment rights." Opening Br. 12. Appellants describe that case as "nearly identical to this" one and as "relying heavily on *Janus*." *Id.* at 17.

But *Road-Con* does not apply here. In that case, contractors and an employee sued to challenge PLAs under several theories, including a *Janus* theory. The district court dismissed the *Janus* claim for lack of

standing, but this Court found that the plaintiffs had standing.  120 F.4th at 355.  *Road-Con* did not overturn cases like *Oliver*.  Nor did it touch the merits of the plaintiffs' *Janus* claim.

*Road-Con* does state that exclusive representation, job referrals, and compelled financial contributions to unions are injuries to legally protected First Amendment interests, but that statement is limited to the standing context.  120 F.4th at 355.  The Court's list of First Amendment injuries in *Road-Con* comes from **allegations** in another standing case: *Associated Builders & Contractors Western Pennsylvania*.  That case found that the plaintiffs lacked standing to bring their *Janus* claim against PLAs.  81 F.4th at 291.

In any event, *Road-Con* refers to "financial[] contribut[ions] **to unions**" — not to employee benefit funds.  120 F.4th at 355 (quoting *Associated Builders & Contractors W. Pa.*, 81 F.4th at 289) (emphasis added).  Appellants have failed to show even the *Road-Con* First Amendment injury.

## B. The District Court Was Right to Reject Appellants' Irreparable Harm Arguments.

### 1. The PLA Requirement Does Not Suppress Appellants' Speech.

Appellants argue that the district court should have presumed that they suffered irreparable harm because they were denied the ability to work on the Surface Alignment Project. Opening Br. 20-22. They also argue that their harms are irreparable because they do not have an adequate remedy under New Jersey law. *Id.* at 23. The district court rejected those arguments, explaining that Appellants failed to demonstrate any chilling effect on free expression and that Appellants could recover either the $1.2 million stipend (if Harms had bid) or damages for the expenses incurred in obtaining prequalification status and for lost opportunity costs. A13-14.

The district court was right to reject Appellants' claims of irreparable harm. Courts almost never presume irreparable harm in the context of preliminary injunctions, even when a party claims a constitutional injury. *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024). The sole exception is for cases alleging unconstitutional *suppression* of speech or worship.

*Id.* at 204.

As set forth above, Appellants have not shown a First Amendment violation, so the exception cannot apply. But putting that aside, Appellants rely almost solely on *Janus*, and as explained, that case concerns the compelled subsidization of speech rather than the chilling of any protected speech.

The case relied on by the district court — *Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989) — is instructive. *See* A14. *Hohe* involved a pre-*Janus* First Amendment challenge to fair share fee deductions that a public sector union received from nonmembers. After the nonmembers moved for a preliminary injunction, the union placed all fair share fees deducted into escrow. The nonmembers failed to show that they risked criminal prosecution, that they had to choose between protected speech and continued employment, or that they experienced any other chilling effects. 868 F.2d at 73. "[T]he mere deduction and collection of fair share fees from nonmembers' paychecks" was not a "constitutional harm of a magnitude requiring a preliminary injunction insofar as those nonmembers may be deprived of money they might use to support their own political, ideological, or other purposes," especially given that the

24

union, by putting the collected funds in escrow, agreed not to use those funds for political purposes. *Id. Hohe* remains good law after *Janus. See Del. State Sportsmen's Ass'n*, 108 F.4th at 203.

Here, the Appellants have not had to pay any dues, fees, or any money whatsoever to the Building Trades Unions, so they have suffered even less harm than the employees in *Hohe*. And as explained above, if they performed work under the PLA, neither Harms nor Burns would be required to subsidize any union. Regardless, even if it is assumed for the sake of argument that Appellants are right on their compelled subsidization claim, they have not shown how mere payments to an employee benefit fund would chill protected expression. Appellants can work on the project and continue to express their views about the Building Trades Unions, without consequence. And nothing in the PLA prohibits Appellants from continuing to associate with the USW.

### 2. Appellants' Remaining Harms Are Self-Inflicted.

Self-inflicted injuries are not irreparable. *E.g., Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995). Harms had the opportunity to bid on the Surface Alignment Project, but chose not to do so. A13 (dist. ct. opinion). According to the district court,

25

a "plain language reading of [the PLA's] provision indicates that Building Trades unions will work with the successful bidder regardless of the successful bidder's union membership or lack thereof and thus negates Harms's contention that its affiliation with USW serves as a basis for its exclusion." A12. Burns can seek work on the project either by being requested by name by Harms if Harms signs the PLA, or by seeking a referral through an affiliate of the Hudson County Building Trades. Burns' Steelworkers membership will not prevent him from being employed on the project because referrals under the PLA cannot be based on union membership or lack thereof. A590-91.

Therefore, by failing to seek work on the Surface Alignment Project, even though nothing in the PLA prohibits either Appellant from performing project work, Appellants have caused their own injuries and have failed to prove irreparable harm.

## II. The PLA Does Not Compel Expressive Association.

Appellants, relying heavily on *Janus*, argue that the PLA "compels Harms and Burns to associate with the [Hudson County Building Trades]." Opening Br. 17. The district court rejected the compelled association argument. A13.

The Appellants do not detail the manner in which the PLA allegedly requires them to associate with the Hudson County Building Trades, but they do cite to the statement in *Road-Con* that referenced allegations in the *Associated Builders & Contractors Western Pennsylvania* case concerning exclusive representation, hiring employees from a union's job referral system, and financially contributing to unions.  Opening Br. 18. To start, as explained above, this Court has already held that *Knight* (which upheld the constitutionality of exclusive representation arrangements) survived *Janus*.  *See Oliver*, 830 F. App'x at 80.  Moreover, as also explained above, the PLA does not require Appellants to contribute anything to the Hudson County Building Trades or any of its affiliated unions.  That leaves the requirement in the PLA that contractors use the referral systems of the affiliates of the Hudson County Building Trades to staff the project.  That requirement does not impinge on Appellants' right of association.

The First Amendment protects expressive association, which is the right to associate with others "in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).  Though unions may engage in

expression, there is nothing remotely expressive in a contractor being required to use a union's referral system, or with an employee being required to seek employment through the union's referral system. Stated differently, the PLA "neither limits what [employees or employers] may say nor requires them to say anything." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.* (*FAIR*), 547 U.S. 47, 60 (2006).

Unlike the plaintiffs in the compelled speech cases Appellants rely upon, the PLA does not compel any employee or employer to communicate any message, whether desired or not. *Compare Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 581 (1995) (parade organizers were required "to alter the[ir] message"); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 626-29 (1943) (students were required to salute and pledge allegiance to the flag); *Wooley v. Maynard*, 430 U.S. 705, 713 (1977) (requirement to display "Live Free or Die" on license plate). Nor does the PLA require Harms or Burns to include the Hudson County Building Trades in any associations or organizations to which they belong. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 656 (2000); *see D'Agostino v. Baker*, 812 F.3d 240, 244 (1st Cir. 2016) (distinguishing *Wooley*, *Dale*, and *Hurley*).

If the PLA required Burns to wear a union t-shirt in order to be referred for work, or required Harms to advertise that it was a "contractor affiliated with the Hudson County Building Trades," then they could make a compelled speech argument. But "it trivializes the freedom protected in *Barnette* and *Wooley* to suggest that" this case is similar in the absence of any such compelled speech. *FAIR*, 547 U.S. at 62.

Appellants' claim that the PLA compels unwanted "association" with building trades unions is governed and foreclosed by the Supreme Court's decision in *FAIR* and its progeny. In *FAIR*, law schools challenged a federal statute that specified "that if any part of an institution of higher education denies military recruiters access equal to that provided other recruiters, the entire institution would lose certain federal funds." 547 U.S. at 51.

The law schools contended that the law required the schools to "associate" with military recruiters by allowing the military to engage in recruiting on the law schools' campuses. The Supreme Court recognized that the law did indeed require the law schools to "'associate' with military recruiters in the sense that they [had to] interact with them."

29

547 U.S. at 69. But the Court recognized that this literal "association" did not infringe upon the protected right of expressive association because those recruiters did not "become members of the school's expressive association," *id.*, and "[n]othing about recruiting suggests that law schools agree with any speech by recruiters," *id.* at 65. Therefore, under *FAIR*, to assert a viable First Amendment expressive association claim, a plaintiff must demonstrate more than merely being required to associate in the literal sense.

When assessing First Amendment compelled association claims, courts look to whether an outsider would reasonably perceive a person's required association with a group as reflecting that person's endorsement of the group's views. *E.g.*, *FAIR*, 547 U.S. at 68-69. Such an assessment differentiates constitutionally protected expressive association from mere "association" in the literal sense that does not implicate the First Amendment.

If outsiders would not reasonably perceive someone's association with a group as reflecting the person's embracing or endorsing that group's views, then that person has not been forced to associate in a manner that implicates the First Amendment. *E.g.*, *FAIR*, 547 U.S. at

65 ("Nothing about recruiting suggests that law schools agree with any speech by recruiters, and nothing in the [challenged law] restricts what the law schools may say about the military's policies."); *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980) (finding no First Amendment violation where views of individuals gathering signatures and distributing pamphlets in a privately owned shopping center would "not likely be identified with those of the owner"); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 460 (2008) (Roberts, C.J., concurring) ("Voter perceptions matter, and if voters do not actually believe the parties and the candidates are tied together, it is hard to see how the parties' associational rights are adversely implicated.").

Several courts have recognized that requiring a contractor to sign a PLA in order to work on a public project, and/or requiring an employee to use a union referral procedure, does not infringe upon the freedom of association. Similarly, courts have held that requiring an employee to be represented by a union that they do not desire does not infringe upon that employee's First Amendment right of association.

In *Christian Labor Ass'n*, the court considered a challenge to referral provisions in several PLAs. Relying on *FAIR*, the court explained

that "the PLAs' referral provisions do not require the employer-plaintiffs, [a labor organization-plaintiff], or an employee to agree with any statement or to make an expression of belief." 2023 U.S. Dist. LEXIS 103016, at *32. The PLAs also did not require membership or any sort of payment to be referred out. *Id.* "In addition, nothing in the PLAs prevents any employee from stating disapproval of the unions or the PLAs, or more broadly expressing opposition to collective bargaining generally." *Id.* Therefore, the PLAs' referral provisions did not compel expressive association in violation of the First Amendment. *Id.* at *33.

Similarly, in *Associated Builders and Contractors, Inc. v. San Francisco Airports Commission*, 981 P.2d 499 (Cal. 1999), the California Supreme Court rejected a First Amendment right of association challenge to a PLA requirement. In that case, the challenge was brought by an association of non-union contractors. The court held that that PLA requirement "in no way prevents [the association] or its members from freely expressing their 'merit shop philosophy' and opposition to unions, nor does it coerce 'pro-union' expressions or associations." *Id.* at 517. Nothing in the PLA "stops [the association] or its members from, or punishes them for, engaging in whatever political action or advocacy they

32

wish." *Id.*; *see also Master Builders of Iowa, Inc. v. Polk County*, 653 N.W.2d 382, 398-99 (Iowa 2002) (same).

Finally, in *Goldstein v. Professional Staff Congress*, 643 F. Supp. 3d 431, 445-46 (S.D.N.Y. 2022), the court relied upon *FAIR* to hold that a union exclusive representation requirement did not violate the First Amendment right of association. The court observed that employees associated together in a bargaining unit are not associated with each other for First Amendment purposes "any more than the travelers on a common public carrier such as a municipal bus or train, or the students in a common public school." *Id.* at 445; *see also D'Agostino*, 812 F.3d at 244 ("[T]he freedom of the dissenting appellants to speak out publicly on any union position further counters the claim that there is an unacceptable risk the union speech will be attributed to them contrary to their own views . . . .").

Here, just as in the cases above, reasonable outsiders would understand that by signing the PLA, Harms is not adopting the expressive views of the Hudson County Building Trades. Indeed, they would be counterparties to the agreement. No reasonable outsider would believe that one counterparty adopts the view of the other counterparty

by signing an agreement. And reasonable outsiders would understand that Burns does not adopt the views of the Hudson County Building Trades merely because he may be required to seek a referral through the systems operated by the affiliates of the Hudson County Building Trades. Very simply, Appellants are free to voice their disapproval of the Hudson County Building Trades, the Gateway Development Commission, and the PLA, and still obtain work on the project. The PLA therefore does not compel expressive association in violation of the First Amendment.[8]

---

[8] For the reasons explained in the Appellees' brief, the Building Trades Unions agree that the district court did not err in finding that the Surface Alignment Project PLA does not exceed the scope of the Gateway Development Commission's statutorily delegated authority.

# CONCLUSION

This Court should affirm the district court's decision.

<div style="margin-left:50%">

Respectfully submitted,

s/ Jonathan D. Newman
Jonathan D. Newman
  D.C. Bar No. 449141
Jacob J. Demree
Shiva M. Sethi
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com
demree@shermandunn.com
sethi@shermandunn.com

</div>

Raymond G. Heineman
KROLL HEINEMAN PTASIEWICZ
PARSONS & JAMESON
91 Fieldcrest Ave.
Suite 35
Edison, N.J.
(732) 491-2100
RHeineman@krollfirm.com

*Counsel for Amici Building Trades Unions*

April 6, 2026

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Rule 29(a)(5) because, excluding the parts of the document exempted by Rule 32(f), it contains 6,497 words.

2. This document compiles with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Century Schoolbook font and fourteen-point type.

3. In accordance with Local Rule 28.3(d), I certify that I am a member of the bar of the Third Circuit in good standing.

4. In accordance with Local Rule 31.1(c), (i) this brief has been scanned for viruses using VIPRE Endpoint Security and is free of viruses; and (ii) paper copies of this brief will be identical to the electronic version of the brief filed via CM/ECF.

<div style="text-align: right;">

s/ Jonathan D. Newman
Jonathan D. Newman
  D.C. Bar No. 449141
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com

</div>

## CERTIFICATE OF SERVICE

I certify that on April 6, 2026, this brief was filed using the Court's CM/ECF system. All attorney participants in the case are registered CM/ECF users and will be served electronically via that system.

<div style="text-align: right">

s/ Jonathan D. Newman
Jonathan D. Newman
   D.C. Bar No. 449141
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com

</div>